**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

LUIS NOVOA, individually, and on
behalf of other members of the general
public similarly situated,

            Plaintiff,

    v.

CHARTER COMMUNICATIONS, LLC,
a Delaware limited liability company; and
DOES 1 through 100, inclusive,

          Defendants.

_____/

1:13-cv-1302-AWI-BAM

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

**I. Introduction**

On May 20, 2014, Defendant Charter Communications, LLC ("Defendant"), filed a

motion for partial summary judgment. On June 16, 2014, Plaintiff Luis Novoa ("Plaintiff"), filed

his opposition. Defendant's reply was filed on June 23, 2014.

Defendant's seeks summary adjudication as to all of Plaintiff's claims that originated

prior to May 24, 2010, Plaintiff's commute time compensation claim, Plaintiff's meal period and

rest period denial claims, and Plaintiff's defective wage statement claim.

For the following reasons, Defendant's motion for summary judgment will be granted in

part and denied in part.

1

1

## II. Background

2      Defendant is a video, internet, and telephone service provider to residential and business

3  customers in certain regions of California. As part of providing those services, Defendant must

4  employ broadband installers or broadband technicians to install, repair, or disconnect services.

5  Defendant also employs quality assurance inspectors and field auditors who review work

6  performed by broadband installers for compliance with Defendant's installation standards.

7      Plaintiff worked for Defendant as a broadband technician from 2005 until 2010.

8  Deposition of Luis Novoa ("Pltf. Dep.") at 21:19-22:4. Plaintiff represents that his

9  responsibilities included handling service calls, sales, and quality assurance work at customer

10  locations in Southern California. Doc. 20 at 7. That description of Plaintiff's job duties roughly

11  tracks with the job description provided by Defendant: "perform basic to advanced

12  troubleshooting and repair for services from tap to [customer] for residential customers, and

13  occasionally for commercial customers. Completes disconnects, downgrades, upgrades, and all

14  installations as business needs dictate." Declaration of Stacy Gannon, Doc. 17-3 at 9-12

15  ("Gannon Decl.") at ¶ 3, Defendant's Exhibit B-1; Pltf. Dep. at 27:7-28:8. In 2010, Plaintiff's job

16  duties changed and he transitioned from the role of broadband technician to quality assurance

17  inspector. Pltf. Dep. at 22:1-24. As quality insurance inspector Plaintiff indicated that his

18  primary role was verifying that service installations were done according to Defendant's

19  standards. Pltf. Dep. at 23:1-10. That description also mirrors the job description proffered by

20  Defendant: "verify that the customer premise (sic) and wiring and services meet all company

21  installation and service specifications." Gannon Decl. at ¶ 3, Exh. B-1; Pltf. Dep. at 31:7-15.

22      Defendant submits that while Plaintiff worked as a broadband technician, he was

23  instructed to drive his assigned company vehicle to his first appointment and to arrive at 8:00

24  a.m. Defendant's Statement of Undisputed Facts, Doc 17-2 ("Doc. 17-2") at ¶10.[1] Defendant

25  provided Plaintiff and the other broadband technicians the option to drive their work vehicles

26

27  _____

[1] That contention is largely undisputed. However, Plaintiff makes the reservation that he was required to report to the Charter facility before his first appointment when he served a dual role as a broadband tech and a quality assurance inspector. Plaintiff's Response to Defendant's Undisputed Facts, Doc. 24 ("Doc. 24") at ¶ 10; Plft. Dep. at 46:2-7; 102:4-9.

28

home each night rather than leave them at one of Defendant's facilities. Declaration of Terri Stephenson ("Stephenson Decl.") at ¶ 5; Pltf. Dep 53:9-54:7; *see* Defendant's Exhibit B-7 ("Timekeeping Memo 2009"). During his time as a broadband technician, Plaintiff always elected to keep his service vehicle at home. Pltf. Dep. at 33:2-19.

On November 9, 2009, Defendant issued a memorandum to Plaintiff and the other broadband technicians detailing the requirements for timekeeping, providing alternative methods for those who take their company vehicles home and those who do not. *See* Timekeeping Memo 2009. Defendant provided updates annually. *See* Defendant's Exhibits B-8 ("Timekeeping Memo 2010"), C ("Timekeeping Memo 2011"), and D ("Timekeeping Memo 2012"). When the broadband technicians elected home-start (take their vehicles home with them) they were required to bring a signal level meter, PDA, laptop, work orders, and any payments from customers ("Daily Kit"), from the vehicle and to their home at the end of their shift and return it to their vehicle at the beginning of their next shift. Timekeeping Memos 2009-2012. Broadband technicians were then required to do a visual inspection of the exterior of the vehicle for any obvious safety hazards. *Id*; Plaintiff's Exhibit N, Doc. 22 at 113-115. Once those two items were completed, the broadband technicians were to turn on their PDA, receive their first assignment, enter their status as "en route," and proceed to their first service call. Timekeeping Memos 2009-2012; Pltf. Dep. at 51:1-3. They were not compensated for the time that it took to complete any of those activities.

Office-start employees (those who elected not to take their company vehicles home with them), were required to be at a company location at the start of their shift. Timekeeping Memos 2009 at 3, 2010 at 4, 2011 at 4, and 2012 at 4. Office-start employees did not engage in any of the aforementioned preparatory activities (e.g. loading their Daily Kits, turning on their PDAs) until they were on the clock. *Id.*

Defendant imposed a vehicle policy on all employees who drove one of Defendant's vehicles. *See* Plaintiff's Exhibit D, Doc. 21 ("Vehicle Policy") at 44-57. That policy restricted use of a company vehicle to: performing job-related duties, transporting other employees while driving for company purposes, and travelling between the driver's work assignment and

residence at the beginning and end of the work day. Vehicle Policy at 45, 51-52. Activities prohibited by the policy included, in part: any personal uses or transporting any family member, friend, or any other person. Vehicle Policy at 45, 52. Additionally, Plaintiff alleges that, while he operated a company vehicle, he was required to remain in uniform, was not permitted to use his personal cell phone, and "had to listed to the radio at a low volume and could only listen to appropriate channels." Pltf. Decl. at ¶ 7.

Broadband technicians were compensated for their work at the beginning of their scheduled shift. For a home-start employee, at the shift's start the technician is expected to be at the first service call and is required to enter their status as "on job" in his or her PDA. Timekeeping Memos 2009-2012; Pltf. Dep. at 51:4-8. Broadband technicians were instructed not to "conduct any work or communicate with any customer, co-worker, supervisor, or dispatcher" during their commute. Timekeeping Memos 2009 at 2, 2010 at 2, 2011 at 2, and 2013 at 2. The memorandum also instructed technicians who arrived at the service location prior to their shift start time not to "contact the customer, fill out paperwork or perform any other work before the scheduled shift start time." *Id.* The memorandum further instructed that employees were to record all hours worked, even if the technician started work prior to his or her scheduled shift in violation of policy. *Id.*

Each service call was scheduled within window of time. Defendant "set routes for broadband techs, notifying them of which customers they were supposed to visit in [each] window of time." Doc. 24 at ¶ 11. The service windows were set such that nothing was scheduled between 12:00 p.m. and 1:00 p.m. to provide a lunch break for the broadband technicians. Doc. 17-2 at ¶ 14. Although Plaintiff does not dispute that he was scheduled a one-hour meal period, he contends that the policy precluding him from "walk[ing] off the service call to take a meal period" prevented him from taking a lunch break until after his fifth hour of work. Doc. 24 at ¶ 14; Declaration of Luis Novoa ("Pltf. Decl.") at ¶ 9. Defendant's employees were instructed to record their meal breaks in Defendant's "eTime" system using the provided PDAs. Pltf. Dep. at 116:13-117:13; Charter Memorandum: "Meal Periods and Rest Breaks for California Employees," Doc. 14-4 at 31 ("Dfdt. Meal and Rest Policy") at 1; Employee

Transactions and Totals – CA Rest Meal Break Report, Doc. 17-4 at 17-24 ("Break Report") at
1. When Plaintiff failed to record a lunch break in the eTime system he was compensated for an
hour of work. *See* Defendant's Exhibit B-24, Doc. 17-3 at 183; Gannon Decl. at ¶ 18. However,
when Plaintiff took meal periods later than five hours into his shift he was not paid any
additional compensation or penalty. *See* Plaintiff's Exhibit F, Doc. 22 at 2-31.

Defendant also had a policy that required employees to take two paid ten-minute breaks
per eight-hour shift. Pltf. Dep. at 80:8-23; *see* Break Report at 1. Defendant did not record and
did not require its employees to record rest breaks. *See* Break Report at 1. Plaintiff alleges that
the policy precluding him from leaving a service call and the time variations inherent in the time
estimation system prevented Plaintiff from taking rest breaks. Pltf. Decl. at ¶ 9; Pltf. Dep. at
80:8-23 ("there was not time in the day to take [rest breaks].). However, Plaintiff never made any
internal complaint related to working off-the-clock, meal period, rest periods or wage statements.
Pltf. Dep. at 159:3-14.

It is undisputed that Defendant used a point system for scheduling service calls. Doc. 24
at 15; Pltf. Dep. at 133:10-15; Stephenson Decl. at ¶ 19. Each point represented an estimated five
minutes of project time. *Id*. It is also undisputed that each tech was only assigned eighty to eighty
five points in one particular day. *See* Doc. 24 at 16 (disputing that Plaintiff was able to finish all
of the work Defendant required of him within 8 hours but not that 80-85 points were assigned
each day); Pltf. Dep. at 133:16-19.

Defendant's time keeping memorandum provides a procedure for home-start broadband
technicians to clock out after all service calls are completed. *See* Timekeeping Memos 2009-
2012. The procedure provides that, after the last service call, the technician is to secure all
equipment in the vehicle, notify the dispatcher that all work has been completed, enter a logged
off status in the PDA, and record all hours worked on the timesheet. *Id*. at 3. After that procedure
has been completed, the employee receives no further compensation for activities in that work
day. *Id.* Once that procedure has been completed the employee is advised to "commute to [his or
her] residence," and not to "conduct any work or communicate about work with any customer,
co-worker, supervisor, or dispatcher." *Id*. Once the technician arrives at home, he or she is

5

1  required to set safety cones, lock the vehicle, and remove the Daily Kit from the vehicle to be

2  secured in the technician's home. *Id.*

3  ### III. Legal Standard

4        The Federal Rules of Civil Procedure provide for summary judgment when "the movant

5  shows that there is no genuine dispute as to any material fact and the movant is entitled to

6  judgment as a matter of law." Fed. R. Civ. P. 56(a). Early resolution of issues that present no

7  dispute genuine dispute of material fact serves a principal purpose of Rule 56 – disposing of

8  unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

9        The party moving for summary judgment bears the initial burden of "informing the

10 district court of the basis for its motion, and identifying those portions of 'the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,*

13 477 U.S. at 323; *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden

14 of proof at trial, the moving party need only prove that there is an absence of evidence to support

15 the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th

16 Cir. 2010) (citing *Celotex,* 477 U.S. at 325). If the moving party meets its initial burden, the

17 burden shifts to the non-moving party to present evidence establishing the existence of a genuine

18 dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475

19 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate

20 a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing

21 law, *see Liberty Lobby,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*

22 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury

23 could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d

24 1433, 1436 (9th Cir.1987).

25        In resolving the summary judgment motion, the court examines the pleadings,

26 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

27 any. Rule 56(c); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). The court must

28 construe all facts and inferences in the light most favorable to the non-moving party. *See Liberty*

1   *Lobby*, 477 U.S. at 255. However, conclusory and speculative testimony does not raise a genuine

2   factual dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v.*

3   *GTE Corp.,* 594 F.2d 730, 738–39 (9th Cir.1979).

4   ### IV. Discussion

5   **A. Preclusive Effect of Classwide Release in *Goodell v. Charter Communications*.**

6        On May 20, 2010, the United States District Court for the Western District of Wisconsin

7   granted preliminary approval to a classwide settlement for a settlement class defined as "any and

8   all persons who were employed by [Charter] in California … in a covered position[2] at any time

9   during the period from August 25, 2005 through August 28, 2008…." *Goodell v. Charter*

10  *Communications, LLC*, W.D. Wis. Case No. 3:08-cv-00512, Doc. 95 (W.D. Wis. May, 20 2010),

11  lodged here as Doc. 17-4 at 198. The release section of the class settlement agreement provides

12  that all class members who failed to opt out of the settlement released any claim that they may

13  have had against Defendant up to and including the date of preliminary approval of the

14  settlement, May 20, 2010. *Goodell v. Charter Communications, LLC*, Doc. 72-1 at 22, lodged

15  here as Doc. 17-4 at 134. That settlement was made final on September 24, 2010. *Goodell v.*

16  *Charter Communications, LLC*, Doc. 115.

17       Plaintiff did not oppose Defendant's motion for summary adjudication on that ground.

18  Accordingly, this Court finds that Defendant is entitled summary adjudication as to that issue.

19  All of Plaintiff's claims which purport to seek recovery for any alleged violations that occurred

20  prior to or occurring on May 24, 2010, are adjudicated in favor of Defendant.[3]

21  **B. Uncompensated Hours Worked Claim**

22       As a preliminary matter, Defendant's motion as to this issue does not address whether the

23  pre-jobsite and post-jobsite activities – turning the PDA on to check assignments and remain on

24  call, loading and unloading the Daily Kit, placing and picking up safety cones, and performing a

25  safety check for any obvious obstructions – constitute compensable work. Doc. 17-1 at 15-19.

26  _____

27  [2] The settlement class included 31 different job classifications including, in part: multiple grades of broadband technicians, data service technicians, quality control technicians, service technicians, and system technicians.

28  [3] Defendant notes that only Plaintiff's sixth cause of action for violation of the UCL purports to recover for violations in that time period. Doc. 17-1 at 15. Plaintiff has given no indication to the contrary.

1  Rather, Defendant focuses on the voluntary nature of its home-start program. *Id*. Plaintiff

2  contends that this failure results in the mischaracterization of his claim. Doc. 20 at 14. This Court

3  will address the commute time component of Plaintiff's first cause of action then then it will

4  consider the impact of the pre-jobsite and post-jobsite activities.

5       i. Commute Time

6       The dispositive question in determining whether an activity is compensable under

7  California law is whether it qualifies as "hours worked." Cal. Code. Regs. tit. 8 § 11042(2)(K).

8  "Hours worked" is defined as "the time during which an employee is subject to the control of an

9  employer, and includes all the time the employee is suffered or permitted to work…." *Id*. In

10  general, the time an employee spends commuting is not compensable. *Morillion v. Royal*

11  *Packing Co.*, 22 Cal.4th 575, 587-88 (2000). However, such time could be compensable if the

12  employer exercised sufficient control over the employee. *Rutti v. Lojack Corp., Inc.*, 596 F.3d

13  1046, 1062 (9th Cir. 2010) (citing *Morillion*, 22 Cal.4th at 578).

14       The California Supreme Court has noted that "the level of the employer's control over its

15  employees, rather than the mere fact that the employer requires the employees' activity, is

16  determinative" of whether an activity is compensable.  *Morillion*, 22 Cal.4th at 587 (citing, *inter*

17  *alia*, *Bono Enterprises, Inc., v. Bradshaw*, 32 Cal.App.4th 968, 975 (1995)). However, the

18  California Supreme Court in *Morillion* and the Ninth Circuit in *Rutti* both placed particular

19  emphasis on the mandatory nature of the commute in determining that the employer exercised

20  sufficient control for the activity to be compensable under California law. *Rutti,* 596 F.3d at

21  1061-1062; *Morillion*, 22 Cal.4th at 587. In *Morillion*, the employee plaintiffs were field workers

22  who were "required to travel" on the defendant's busses. *Morillion*, 22 Cal.4th at 580. The court

23  held that "[w]hen an employer requires its employees to meet at designated places to take its

24  buses to work and prohibits them from taking their own transportation, these employees are

25  'subject to the control of an employer,' and their time spent traveling on the buses is

26  compensable as 'hours worked.'" *Id*. at 587. It noted that Defendant controlled "when, where,

27  and how plaintiffs … travel[led]" and that the control exercised deprived the employees of their

28  ability to run errands before work, to leave early for personal appointments, and to "decide when

1  to leave, which route to take …, and which mode of transportation to use ….” *Id.* at 586-587.

2  However, the court was careful to make clear “that employers do not risk paying employees for

3  their travel time merely by providing them transportation. Time employees spend traveling on

4  transportation that an employer provides but does not require its employees to use may not be

5  compensable as ‘hours worked.’” *Id.* at 588 (citation omitted).

6          In *Rutti*, the plaintiff sought to bring suit on behalf of a class of vehicle recovery system

7  technicians who were required to use company vehicles in the course of their employment. *Rutti*,

8  596 F.3d at 1049. The plaintiff was paid on an hourly basis, beginning when he arrived at his

9  first job location and ending when he completed his final job of the day. *Id.* The *Rutti* court noted

10  that under California law “it is the ‘level of the employer’s control over its employees’ that ‘is

11  determinative,’ not whether the employee just so happens to depart from, or return to, his home

12  instead of some other location.” *Id.* at 1062 (citing *Morillion*, 22 Cal.4th at 587). However, the

13  Ninth Circuit gave special emphasis to the fact that, during the uncompensated commute, the

14  plaintiff “was *required* to drive the company vehicle….” *Id.* at 1061 (emphasis original). As a

15  result of the defendant’s mandatory vehicle policy, the plaintiff “could *not* stop off for personal

16  errands, could *not* take passengers, was required to drive the vehicle *directly* from home to his

17  job and back, and could *not* use his cell phone while driving except that he *had* to keep his phone

18  on to answer calls from the company dispatcher.” *Id.* at 1061-1062 (emphasis original).

19          Several of the considerations articulated by the *Mortillion* and *Rutti* courts regarding

20  employer control pull in opposite directions in this case. Although Plaintiff was not required to

21  home-start, when he elected to do so Defendant’s Vehicle Policy prevented him from effectively

22  using the time for his own purposes including using his cell phone, “drop[ping] of [his] children

23  at school, stop[ping] for breakfast before work, or run[ning] other errands requiring use of a car.”

24  *Morillion*, 22 Cal.4th at 587; *Rutti*, 596 F.3d at 1061-1062; *see* Vehicle Policy. Further, Plaintiff

25  was required to keep his company issued phone turned on and remain on call “to answer calls

26

27

28

from the company dispatcher." *Rutti*, 596 F.3d at 1061-1062; *See* Timekeeping Memos 2009-2012.[4]

Although *Mortillion* and *Rutti* both focused on employer control, both gave heightened consideration to the fact that the employer transportation was mandatory. *Rutti,* 596 F.3d at 1061-1062; *Morillion*, 22 Cal.4th at 587-588. Moreover, Plaintiff has directed this Court to no case, and the Court's research has yielded no case, where an employee has been found to be subject to an employer's control where the plaintiff voluntarily elected to commute in the employer's vehicle. *Cf. Campbell v. Best Buy Stores, L.P.*, 2013 WL 5302217, *7 (C.D. Cal. 2013) (denying Best Buy's motion for summary judgment due, in part, to a disputed issue of fact as to whether a home-start was required); *Alcantar v. Hobart Service*, 2012 WL 6539547, *1, 3-4 (C.D. Cal. 2012) (holding that commute time in company vehicle – even where use of the vehicle was restricted non-personal uses – was not compensable because it was optional); *Overton v. Walt Disney Co.,* 136 Cal.App.4th 263 (2006) (holding that time was not compensable where the employer provided but did not require use of a shuttle). *See also Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 317, 324 (2005) (holding that time was compensable where "the crew was required to travel in [the employer's] vehicle to job sites").

As noted, in the instant case, Defendant did not require Plaintiff to home-start. Doc. 24 at ¶22. Plaintiff was given the option to either use his own vehicle to commute to one of Defendant's facilities to retrieve a company vehicle or keep a company vehicle at home each night. *Id.* As a result of Plaintiff's election to keep a company vehicle at his home he was required to comply with Defendant's Vehicle Policy. Despite the restrictions that Defendant placed on Plaintiff's use of the company vehicle, its use to commute directly to the first job assignment was voluntary. Thus, the use of the vehicle to commute to and from home was not compensable. *Morillion*, 22 Cal.4th at 587-588; *see Alcantar*, 2012 WL 6539547 at *4 ("Plaintiff's argument that he was under the control of Defendants' during his commute is … unavailing because … Plaintiff was not required to subject himself to Defendants' control.")

---

[4] Plaintiff never actually made or received any business related phone calls during his commute. Pltf. Dep. at 58:19-59:2. *See Stevens v. GCS Service, Inc.*, 281 Fed.App'x 670, 673 (9th Cir. 2008) (noting that, under California law, engaging in brief work related calls during a commute could be *de minimis*, thus not compensable).

1    Defendant's motion for summary judgment will be granted on this ground.

2    ii. Uncompensated Off-the-Clock Work Activities

3    It is undisputed that Plaintiff and other home-start employees were required to engage in

4    uncompensated pre-jobsite and post-jobsite activities. Those activities include: turning the PDA

5    on to check assignments and remain on call, loading and unloading the Daily Kit, placing and

6    picking up safety cones, and performing a safety check for any obvious obstructions. Plaintiff's

7    complaint also sets out claims for uncompensated work time based on the following activities:

8    being placed "on-call" to answer customer calls without compensation (First Amended

9    Complaint, Doc. 11 ("FAC") at ¶¶ 23, 42), testing equipment (FAC at ¶¶ 22, 41), conducting

10   routine company vehicle maintenance and recording the results (FAC at ¶¶ 21, 40),   Plaintiff

11   contends that those activities constitute compensable work. Defendant has not moved for

12   summary judgment as to the compensability of those activities. *See* Doc. 27 at 10, n. 6.

13   Accordingly, this Court makes no ruling on those claims.

14   **C. Meal and Rest Period Non-Compliance Claim**

15   California Labor Code Section 512 prohibits any requirement that employees work for

16   extensive periods of time without a meal period. Generally, an employee is entitled to a half-hour

17   meal period if the employee works five hours in a day and two half-hour meal periods if the

18   employee works for more than ten hours in a day. *See* Cal. Labor Code § 512(a); Cal. Code

19   Regs., tit. 8 § 11040 (11)(A). The first required meal period must be permitted no later than the

20   end of an employee's fifth hour of work and the second meal period no later than the end of the

21   employee's tenth hour of work. *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004,

22   1041 (2012). California law also mandates that employers "authorize and permit all employees to

23   take [paid] rest periods" for a minimum of ten minutes per four hours worked. Cal. Code Regs.,

24   tit. 8 § 11040 (12)(A).

25   Section 226.7(b) prohibits an employer from requiring an employee to work during a

26   meal or rest or recovery period. Cal. Labor Code § 226.7(b). If an employer fails to provide a

27   meal or rest or recovery period that complies with California law it must pay the employee one

28

1  additional hour of pay at the employee's regular rate of compensation ("premium wages"). Cal.

2  Labor Code § 226.7(c); *see* Cal. Code Regs., tit. 8 §§ 11040 (11)(A-B), (12)(A-B).

3       Defendant is correct that the California Supreme Court in *Brinker Restaurant Corp. v.*

4  *Superior Court,* 53 Cal.4th at 1040, held that an employer is compliant with the requirement that

5  it provide a meal break if the employer "relieves its employees of all duty, relinquishes control

6  over their activities and permits them a reasonable opportunity to take an uninterrupted 30–

7  minute break, and does not impede or discourage them from doing so."  "[T]he employer need

8  not ensure that the employee does no work." *Brinker*, 53 Cal.4th at 1034. In fact, imposing an

9  obligation on an employer to ensure that no work is done might actually be inconsistent with the

10  requirement that the employer relinquish control over the employee. *Id.* at 1038-1039. However,

11  an employer will not avoid liability for premium wages if it "undermine[s] a formal policy of

12  providing meal breaks by pressuring employees to perform their duties in ways that omit

13  breaks." *Id.* at 1040. In similar fashion, an employer cannot supplant a formal policy of

14  providing meal or rest breaks by imposing conflicting policies that impede or discourage an

15  employee from taking compliant breaks. *See Id.*; *Ricaldai v. U.S. Investigations Services, LLC*,

16  878 F.Supp.2d 1038, 1042 (C.D. Cal. 2012) (collecting cases holding that meal period violations

17  were present in instances when an employer pressured employees to skip meal periods).

18       There is no genuine dispute that Defendant assigned service calls between 8:00 a.m. and

19  12:00 p.m., scheduled nothing between 12:00 p.m. and 1:00 p.m., then assigned service calls

20  between 1:00 p.m. and 5:00 p.m.. Pltf. Dep. at 135:9-19. Similarly, it is undisputed that the

21  unscheduled hour was provided for the purpose of providing Plaintiff a lunch break and that

22  Defendant's written policy required Plaintiff to take a lunch break. Doc. 24 at ¶ 51. Despite the

23  fact that an hour meal break was scheduled at the end of the 4th hour of work, Plaintiff contends

24  that "there were occasions that [he] was not able to take [a] meal period until after his 5th hour of

25  work." Pltf. Decl. at ¶ 9; Pltf. Dep. at 48:4-11, 20-23. Plaintiff explains that this was the case

26  because, after beginning a service call, he was not permitted to leave the call to take a meal

27  break. *Id*. However, Plaintiff does not explain *why* he believes that he was not permitted to take a

28  meal break during a service call nor does he point this Court to any evidence that would tend to

1  indicate that Defendant precluded Plaintiff from taking a break during a service call. In fact,

2  Plaintiff's deposition testimony tends to indicate Defendant never preluded Plaintiff from taking

3  a break during a service call and that Plaintiff never asked to do so. *See* Pltf. Dep. at 135:9-

4  136:10. Furthermore, it is undisputed that Plaintiff was not required to finish all of the calls

5  assigned to him before he took a break; if his assignments took longer than expected he was

6  permitted to call a dispatcher to get the overage of assignments reassigned to other broadband

7  technicians. Pltf. Dep. at 129:15-130:1; Defendant's Exhibit G at 1 ("Whenever you believe that

8  you will have difficulty taking meal periods or rest breaks, you must promptly inform you

9  supervisor so that the Company can assist you with setting aside time for meals and breaks.")

10  Additionally, Plaintiff has articulated no reason why he could not have taken a lunch break prior

11  to a service call that might run over his fifth hour of work.

12      Defendant points the Court to *Reece v. Unitrin Auto & Home Ins. Co.*, 2013 WL 245452,

13  *5-6 (N.D. Cal. 2013), where the court rejected the plaintiff's theory the he was denied rest and

14  meal breaks because "[d]efendant 'structured [p]lanitff's schedule so that it was … impossible

15  for plaintiff to take meal breaks." The court held, despite the plaintiff's allegations that the

16  defendant prevented the taking of meal and rest breaks, that the plaintiff's failure to provide

17  evidence to support his allegations was fatal to his claim. *Reece*, 2013 WL 245452, at *6. The

18  evidence in this case is strikingly similar to that in *Reece*:

19      When asked, "Did you ever see anything or hear anything during your
20      employment that led you to believe you were not allowed to take a meal period?"
        Plaintiff responded, "No, no." (citation) Plaintiff has also admitted that he never
21      complained about not being able to take such breaks.

22  *Id*. at *6. Plaintiff was never told that he couldn't take a meal period or rest period. As noted,

23  Defendant's written policy required him do so. Plaintiff never complained that he was unable to

24  take meal period or rest period. Pltf. Dep. at 80:19-81:2, 159:6-11. In fact, on occasions when

25  Plaintiff failed to record meal periods, his supervisor reminded him of the requirement to take at

26  least a half hour lunch period. Doc. 17-3 at 174-181.

27      Plaintiff has not provided evidence from which a reasonable jury could conclude that

28  Defendant failed to make meal periods available to Plaintiff before the end of the fifth hour of

1    work. Plaintiff has similarly failed to provide evidence of denial of rest breaks. Furthermore, an

2    employee's voluntary delay of meal breaks past the fifth hour of work (even if known to an

3    employer) does not render an employer liable for premium pay. *Brinker*, 42 Cal.4th at 1040;

4    *Klune v. Ashley Furniture Industries Inc.*, 2015 WL 1540906, *6 (C.D. Cal. 2015) (noting that an

5    employer satisfied the requirement that it provide a meal period within five hours of work where

6    the employer knew and reprimanded an employee who – in violation of company policy –

7    regularly clocked out after the fifth hour by choice to complete sales); *Carrasco v. C.H.*

8    *Robinson Wordwide, Inc.*, 2013 WL 6198944, *9 (E.D. Cal. 2013) (holding that an employer did

9    not undermine a formal policy of providing meal and rest periods where the employee alleged

10   that she forewent meal and rest periods "to be able to timely complete the tasks assigned" by her

11   employer); *Plaisted v. Dress Barn, Inc.*, 2013 WL 300913, *3-4 (C.D. Cal. 2013) (same).

12        Plaintiff has provided evidence tending to show, at most, that he delayed his meal breaks

13   beyond the fifth hour of work by choice – in violation of company policy.[5] Plaintiff was

14   permitted to seek coverage for assignments that he could not complete but elected not to do so.

15   Defendant's policy complied with the requirement that it provide Plaintiff the opportunity to take

16   the required meal and rest breaks. Plaintiff has not submitted sufficient evidence for a jury to

17   determine that Defendant's practice inhibited its stated policy of providing (and in fact requiring)

18   meal periods. Plaintiff's rest break denial claim fails on the same basis.

19

20

21   [5] Although Defendant relinquished control over plaintiff to take a meal break, Plaintiff did not always take a meal

22   break. *See* Plaintiff's Exhibit F. Where an employee works through an off duty meal period and the employer knew
     or should have known that the employee's work did not cease, the employer is liable for straight pay. *Brinker*, 53
     Cal.4th at 1039-1040, n.19 (citing, *inter alia*, *Morillion*, 22 Cal.4th at 585). Plaintiff admits that Defendant "did

23   attempt to pay for its non-compliant meal periods, but [he does] not think the [he] received all meal period premium
     wages owed. Plft. Decl. at ¶ 11. Plaintiff's decision to work through his lunch break and take a break after his fifth

24   hour of work does not create liability for premium wages. Plaintiff's belief that he did not receive all of the premium
     wages owed is based on his erroneous understanding that he is entitled to premium wages when he voluntarily took

25   meal periods after his fifth hour of work. *See Brinker*, 53 Cal.4th at 1040, n.19. On the occasions when Plaintiff took
     no meal break, he was compensated for the additional hour of work and paid overtime for the hours worked in

26   excess of eight hours of work in one day. *See*, *e.g.*, Doc. 22 at 10-12 (compensating Plaintiff for the missed meal
     period at his regular rate of compensation and paying compensating at overtime rate for hours worked in excess of

27   eight hours). Accordingly, the evidence submitted all tends to indicate that Defendant complied with California law
     regarding meal and rest periods and appropriately paid overtime when Plaintiff voluntarily worked through his meal

28   break in violation of company policy.

1    Accordingly, Defendant's motion for summary judgment will be granted as to Plaintiff's

2    meal and rest period denial claims.

3    **D. Wage Statement Claim**

4        i. Limitations Period

5        Plaintiff contends that Defendant's wage statements are not compliant with California

6    law because they fail to accurately record hours worked, the appropriate hourly rate, and the

7    applicable pay period. Plaintiff therefore seeks relief pursuant to California Labor Code Section

8    226(e).[6] As a preliminary matter, Defendant argues that whether the alleged failures took place is

9    irrelevant to his claim because only Plaintiff's final wage statement – when he worked as a

10   quality assurance inspector and did not home-start – falls within the one-year limitations period.

11   Defendant is only partially correct. While California Code of Civil Procedure Section 340

12   prescribes a one-year limitations period for "[a]n action upon a statute for a penalty or

13   forfeiture," California Code Civil Procedure Section 338 sets a three-year period for "[a]n action

14   upon a liability created by statute, other than a penalty or forfeiture." The plain language of

15   California Labor Code Section 226 provides for both actual damages and penalties. Cal. Labor

16   Code § 226(e)(1) (providing that an employee suffering injury as a result of a knowing and

17   intentional failure to provide an accurate wage statement is entitled to the greater of (1) "actual

18   damages" or (2) specified penalties not to exceed $4,000.00). District courts that have recently

19   confronted the issue have come to the same conclusion. *See Sarkisov v. StoneMor Partners, L.P.*,

20   2014 WL 1340762, *2 (N.D. Cal. 2014) (recognizing that two limitations periods could apply to

21   a claim under Section 226 because it authorizes damages and penalties); *Mouchati v. Bonnie*

22   *Plaints, Inc.,* 2014 WL 1661245, *8-9 (C.D. Cal. 2014) (same); *Taylor v. West Marine Products,*

23   *Inc.*, 2014 WL 4683926, *7 (N.D. Cal. 2014) (following *Sarkisov*); *Singer v. Becton, Dickenson*

24   *& Co.*, 2008 WL 2899825, *4-5 (S.D. Cal. 2008). *But see Werstiuk v. Jacobs Engineering*

25   *Group, Inc.*, 2014 WL 2621674, *5 (Cal.Ct.App. 2014) (finding that the one-year limitations

26   period of Section 340 applies to claims under Section 226(e)(1) based on *Murphy v. Kenneth*

27

28   _____
     [6] Discussed in Section IV(D)(ii), *infra*.

1   *Cole Productions, Inc.,* 40 Cal.4th 1094, 1108 (2007) where the California Supreme Court

2   referred to Section 226 as imposing a penalty).

3        Where courts have found that the one-year limitations period of California Civil Code

4   Section 338(a) applies it has been in reliance on a passing reference by the California Supreme

5   Court to Section 226 as imposing a penalty. *Werstiuk*, 2014 WL 2621674, *5 (citing *Murphy*, 40

6   Cal. 4th at 1108). In referring to Section 226 as imposing a penalty, the California Supreme

7   Court only referred to the $50 and $100 figures recoverable under subdivision (e).[7] *Murphy*, 40

8   Cal.4th at 1108. Courts that have recognized that two limitations periods apply to Section 226

9   have uniformly found that the $50 and $100 figures recoverable under Section 226(e)(1) are

10  penalties, subject to a one-year limitation period. *Taylor*, 2014 WL 4683926 at *7; *Sarkisov*,

11  2014 WL 1340762 at *2; *Mouchati*, 2014 WL 1661245 at *8-9; *Singer*, 2008 WL 2899825, *4-

12  5. Furthermore, those cases have noted that Section 226(e)(1) allows recovery for lost wages

13  which are a measure of damages, not a penalty. *Id*. This Court is convinced that Section 226

14  provides for both damages and penalties. Therefore, depending on the relief sought, a claim

15  pursuant to Section 226(e)(1) could be subject to a one-year or a three-year limitations period.

16       A reading of Plaintiff's complaint makes clear that Plaintiff seeks "the greater of …

17  actual damages … or an aggregate penalty…." Doc. 1-1 at p. 16, ¶ 80. To the extent that Plaintiff

18  has suffered damages as a result of Defendant's failure provide accurate paystubs because it

19  failed to compensate Plaintiff for pre-jobsite and post-jobsite hours worked (i.e. lost wages), a

20  three-year limitations period applies. To the extent that Plaintiff's wage statement claim seeks to

21  recover penalties, it is restricted by a one-year limitations period.

22       ii. Merits

23       California Labor Code Section 226 requires employers to provide wage statements

24  showing, *inter alia*: gross wages earned, the inclusive dates of the period for which the employee

25  is paid, and all applicable hourly rates in effect during the pay period and the corresponding

26  number of hours worked at each hourly rate by the employee. Cal. Labor Code § 226(a) subds.

27  (1), (6), & (9). Plaintiff alleges that Defendant failed on all three accounts. Section 226(e)

28
_____

[7] Now renumbered as subdivision (e)(1).

1  provides a remedy for employees injured by an employer's failure to comply with those

2  requirements.[8] An action pursuant to Section 226(e) requires proof of three elements: (1)

3  violation of Section 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury.

4  *Derum v. Saks & Co.*, --- F.Supp.3d ----, 2015 WL 1396651, *5 (S.D. Cal. 2015) (citing *Willner*

5  *v. Manpower, Inc.*, 35 F.Supp.3d 1116, 1128 (N.D. Cal. 2014)).

6                    *1. Violation of Section 226(a)*

7         First, Plaintiff alleges that Defendant's wage statements are in violation of Section

8  226(a)(1) because Defendant failed to compensate for the pre-jobsite and post-jobsite activities,

9  (discussed but not adjudicated in Section IV(B)(ii), *supra*) thus those hours are not reflected on

10  the wage statement, rendering the gross wages inaccurate. Other than the argument that the

11  limitation period forecloses Plaintiff from bringing this claim – which this Court has rejected –

12  Defendant does not address this claim. Failure to reflect wages earned for compensable time

13  violates subdivision (a)(1). Because Defendant has not moved for summary judgment as to

14  Plaintiff's pre-jobsite and post-jobsite activities the Court does not resolve whether those hours

15  are compensable.

16         Second, Plaintiff claims that Defendant failed to comply with the requirements of Section

17  226(a)(6) because the wage statements failed to include the date range of the pay period. Rather,

18  Defendant provided only the end date. It is undisputed that Plaintiff was aware that his pay

19  period was "every two weeks." Pltf. Dep. at 119:12-20.

20         Labor Code Section 226(a)(6) requires an employer to provide "the inclusive dates of the

21  period for which the employee is paid." Defendant has argued only that it "is not aware of any

22  authority that support's Plaintiff's argument that showing a period ending date in a situation

23  where wage statements are issued every two weeks" violates the requirement of Section

24  226(a)(6). Such authority exists. A line of caselaw has developed at the district court level

25

26  [8] Specifically, Section 226(e)(1) provides:
      An employee suffering injury as a result of a knowing and intentional failure by an employer to comply
27    with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the
      initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each
28    violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars
      ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

1   holding that an employer must provide a wage statement bearing an end date and beginning date

2   to be in compliance with subdivision (a)(6). *Willner v. Manpower, Inc.*, 35 F.Supp.3d 1116,

3   1128-1129 (N.D. Cal. 2014); *McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222, 1229 (C.D.

4   Cal. 2011); *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, *5-6 (S.D. Cal.

5   2010).[9] That line has reasoned that including a beginning date on the wage statement is required

6   because the "inclusive dates" language of subdivision (a)(6) contemplates a range of dates with a

7   definite beginning and end. *Willner*, 35 F.Supp.3d at 1128-1129; *McKenzie*, 765 F.Supp.2d at

8   1229; *Lopez*, 2010 WL 2839417 at *5-6; *see Gleming v. Covidien, Inc*., 2011 WL 7563047, *2

9   (C.D. Cal. 2011). *But cf., Derum v. Saks & Co.*, 2015 WL 1396651 at *4-5 (holding that failure

10  to list a beginning date of a pay period on a pay stub was not a violation of Section 226(a)(6)

11  when the employer provided an electronic wage statement that did include the beginning date of

12  the pay period). This Court has been provided with no reason to depart from the holding or

13  reasoning of those opinions. Failure to list a beginning date of a pay period on wage statement

14  violates subdivision (a)(6).

15          Third, Plaintiff alleges that Defendant violated the requirement of Section 226(a)(9) that

16  an employer provide all applicable hourly rates in effect during the pay period and the

17  corresponding number of hours worked at each hourly rate by the employee because the wage

18  statements failed to reflect the pre-jobsite and post-jobsite activities and failed to display

19  premium wages for meal period violations at the appropriate rate. It is undisputed that Defendant

20  did not include on wage statements the pre-jobsite and post-jobsite activities of home-start

21  employees as hours worked, did not display an applicable hourly rate, and did not compensate

22  for those activities. If Plaintiff is correct that the pre-jobsite and post-jobsite activities are

23  considered hours worked, it would follow that Defendant's failure to report them on the wage

24  statement would be in violation of subdivision (a)(9). Again, because Defendant has not moved

25  for summary judgment as to that issue, this Court will not resolve it.

26

27  [9] Moreover, Plaintiff's knowledge of the pay period is not relevant for purposes of determining whether Section
    226(a) was violated. Section 226(a) deals only with what must be displayed on a wage statement. That the pay
28  period was every two weeks would only be relevant for purposes of determining whether a violation of Section
    226(a) took place if it were noted on the statement itself. It is not. *See* Doc. 22 at 33-42.

1    As to Plaintiff's claim that Defendant failed to display premium wages for meal periods

2  at the appropriate rate, this Court has already determined that Defendant did not violate Section

3  226.7. As such Defendant was not liable to Plaintiff for premium wages. Nevertheless, some of

4  Plaintiff's wage statements reflect that he was paid for "CA Rest/Meal Bk." *See, e.g.,* Doc, 22 at

5  12, 26, 33-42. All of the hours recorded thereunder were paid at Plaintiff's regular rate. *Id*. Such

6  payments are consistent with California law which requires only that Plaintiff be paid "straight

7  pay" for the time that he worked during his meal breaks if Defendant knew or should have

8  known. *Brinker*, 53 Cal.4th at 1039-1040, n.19. Accordingly, Defendant did not violate Section

9  226(a)(9) for failure to accurately display meal period compensation rates or hours.

10                     *2. Knowing and Intentional*

11    Section 226(e)(1) requires that an employer's failure to comply with Section 226(a) be

12  "knowing and intentional" to be actionable. Section 226(e)(3) explains that "a 'knowing and

13  intentional failure' does not include an isolated and unintentional payroll error due to a clerical

14  or inadvertent mistake." It further notes that in determining compliance, a factfinder may

15  consider whether the employer had adopted a set of policies in compliance. *See* Cal. Labor Code

16  § 226(e)(3). Subdivision (e)(3) makes clear the legislative intent to exclude inadvertent clerical

17  errors that depart from an otherwise compliant wage statement policy from the permissible scope

18  of an action pursuant to that section. Plaintiff contends that Defendant's wage statements were

19  consistently incorrect. There is no dispute that the two remaining factual predicates for violation

20  of Section 226(a) – that Defendant did not compensate for required pre-jobsite and post-jobsite

21  activities and that Defendant did not include the beginning date for the pay period on the wage

22  statements – permeated Defendant's wage statement policies; they were not inadvertent clerical

23  errors.

24    Recognizing that to be the case, Defendant contends that Plaintiff cannot demonstrate

25  that any of Defendant's violations of Section 226(a) were knowing and intentional because

26  Plaintiff cannot show that Defendant "lacked a good faith belief that it complied with the

27  statute." Doc. 27 at 19. Defendant directs this Court to *Guifoyle v. Dollar Tree Stores, Inc.*, 2014

28  WL 66740, *7 (E.D. Cal. 2014), for the proposition that an employer's good faith in believing

that it did not violate Section 226(a) – i.e. that it believe that it had provided an accurate wage statement – is enough to show that its violation was not knowing and intentional. The *Guifoyle* court is not alone in that view. *See Apodaca v. Costco Wholesale Corp.,* 2014 WL 2533427, *3 (C.D. Cal. 2014) (citing, *inter alia*, *Wright v. Adventures Rolling Cross Country, Inc.*, 2013 WL 1758815, *9 (N.D. Cal. 2013)); *Rieve v. Coventry Health Care, Inc.*, 870 F.Supp.2d 856, 876-877 (C.D. Cal. 2012); *Lopez v. United Parcel Service, Inc*., 2010 WL 728205, *9 (N.D. Cal. 2010). However, a different line of district court cases have found that "[w]hether the employer knew it was violating section 226(a) is irrelevant." *Derum v. Saks & Co.*, 2015 WL 1396651 at *7. Instead, that line frames the relevant inquiry as whether the employer was aware of the factual predicate underlying the violation; e.g., whether the defendant knew that the wage statement contained only the end date of the pay period. *Id.*; *Contreras v. Performance Food Group, Inc.*, 2014 WL 6481365, *4 (N.D. Cal 2014); *Willner v. Manpower Inc.*, 35 F.Supp.3d at 1131-1132; *see Perez v. Safety-Kleen Systems, Inc.*, 2007 WL 1848037, *9 (N.D. Cal. 2007) (finding that ignorance of the requirement that an employer record the number of hours worked did not render the violation of Section 226(a) unknowing or unintentional when the employer knew that the wage statements contained an incorrect representation of hours worked); *Cornn v. United Parcel Service, Inc*., 2006 WL 449138, *2-3 (N.D. Cal. 2006) (holding that Section 226 requires an employer to report all hours worked; not reporting hours disputed – regardless of good faith – does not meet that standard).

Of the cases that have identified that "good faith" by an employer could impact a Section 226(e)(1) claim, few have affirmatively held that a finding of good faith precludes a finding that the violation was knowing and intentional. Compare *Apodaca*, 2014 WL 2533427 at *3 ("Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional."); with *Wright*, 2013 WL1758815 at *10 (discussing good faith in relation to Section 226(e)(1) and holding only that the court "cannot say, as a matter of law, that [the] good faith defense isn't viable."). Regardless of each court's willingness to recognize a good faith defense, no court has granted summary judgment to an employer, finding that it acted in good faith when it violated Section 226(a); such a determination is "generally a question for

1   the factfinder to resolve at trial." *Guifoyle*, 2014 WL 66740 at *7 (citing *Ricaldi v. U.S.*

2   *Investigations Servs., LLC*, 878 F.Supp.2d 1038, 1047 (C.D. Cal. 2012) (collecting cases)); *see*

3   *Lopez v. United Parcel Service, Inc.* 2010 WL 728205, *9; *Rieve*, 870 F.Supp.2d at 876-877. *But*

4   *see*, *Hurst v. Buczek Enterprises, LLC*, 870 F.Supp.2d 810, 829 (N.D. Cal. 2012) (granting an

5   unopposed motion for summary judgment where the employer believed in good faith that the

6   employee was an independent contractor, thus not subject to the provisions of 226(a)).

7       This Court would note that the courts that allowed a good faith defense have done so

8   without explicitly identifying that it is a mistake of law defense. Such a defense stands contrary

9   to the often repeated legal maxim: "ignorance of the law will not excuse any person, either

10  civilly or criminally." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573,

11  581 (2010) ("Our law is therefore no stranger to the possibility that an act may be 'intentional'

12  for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated

13  the law.")  Further, refusal to recognize the judicially-created good faith defense is more

14  consistent with Section 226(e)(3). If an employer's belief that it is in compliance with Section

15  226(a) were adequate to render any violation not knowing and not intentional, whether an

16  employer had *actually* "adopted … a set of policies … that fully comply with" Section 226 –

17  which subdivision (e)(3) advises a factfinder to consider – would be irrelevant. Additionally, it

18  would be equally meaningless for subdivision (e)(3) to note that an "isolated and unintentional

19  payroll error due to a clerical or inadvertent mistake" is not knowing and intentional because a

20  good faith belief that the employer complied with Section 226(a) would likely envelop all

21  inadvertent mistakes. Accordingly, though some district courts in the circuit have read a good

22  faith defense into to Section 226(e), this Court declines to do so. In other words, this Court holds

23  that a mistake of law – even when made in good faith – does not prevent Defendant's conduct

24  from knowingly and intentionally failing to comply with subdivision (a).

25       It is undisputed that Defendant knew that Plaintiff was performing pre-jobsite and post-

26  jobsite activities that it did not compensate for and it knew that it did not include in the wage

27  statement of all inclusive dates in the pay period. Because this Court does not apply a good faith

28  defense to Section 226(e), Defendant's failure to include the unpaid pre-jobsite and post-jobsite

1   hours in the wage statement was a knowing violation of Section 226 subdivisions (a)(1) and

2   (a)(9). Correspondingly, Defendant's failure to give beginning dates for the pay period in

3   violation of Section 226 subdivision (a)(6) were equally knowing and intentional.

4          *3. Resulting Injury*

5        As a threshold matter, effective January 1, 2013, subdivision (e) was amended to add

6   explanations of when an employee is deemed to have suffered an injury for purposes of Section

7   226. 2012 Cal. Legis. Serv. Ch. 844 (A.B.1744) (West). That amendment explained that the

8   employee suffers injury when an employer fails to provide accurate and complete information as

9   required by subdivision (a) and "the employee cannot promptly and easily determine" – among

10  other things – "the amount of gross wages … paid to the employee during the pay period or any

11  of the other information required … pursuant to items … (6) and (9) of subdivision (a)." Cal.

12  Labor Code § 226(e)(2)(B)(i). Defendant contends that because Plaintiff's claims all relate to a

13  time period before the effective date of the amendments that they do not apply to his claims. The

14  Court would note that the 2013 Amendment does not represent a substantive shift in Section 226

15  (with the possible exception of Section 226(e)(1)(2)(A) – not at issue here). *See Price v.*

16  *Starbucks Corp.*, 192 Cal.App.4th 1136, 1143 (2011) (recognizing that an injury exits where

17  "inaccurate or incomplete wage statements … require[] … plaintiffs to engage in discovery and

18  mathematical computations to reconstruct time records and determine if they were correctly

19  paid"); *Torchia v. W.W. Grainger, Inc.,* 304 F.R.D. 256, 274 (E.D. Cal. 2014) (noting that the

20  2013 Amendment simply clarified that the injury requirement is minimal); *Fields v. West Marine*

21  *Products, Inc.*, 2014 WL 547502, *8 (N.D. Cal. 2014) (same); *see also Wright v. Menzies*

22  *Aviation, Inc.*, 2013 WL 5978628, *10 (Cal. Ct. App. 2013) (unpublished). Rather, the 2013

23  Amendment is best understood as clarifying that the Section 226 injury requirement hinges on

24  whether an employee can "promptly and easily determine" from the wage statement, standing

25  alone, the information needed to know whether he or she is being underpaid. *Wright*, 2013 WL

26  5978628 at *10.

27

28

1   That said, regardless of whether the Court applies the 2013 Amendment additions to the

2   injury requirement of subdivision (e), the injury requirement is minimal.[10] The wage statement at

3   issue here (1) omitted potentially compensable hours and the appropriate rate of pay for those

4   hour and (2) omitted the date range for the pay period. Both of those failures require Plaintiff to

5   engage in mathematical computations to reconstruct time records and determine if he was

6   correctly paid.

7        iv. Conclusion

8   Defendant's motion for summary judgment as to Plaintiff's wage statement claim will be

9   granted insofar as it is derivative of his meal break and rest break claims and commute time

10  claim. Defendant's motion will be denied as it relates to Defendant's wage statements' failure to

11  display gross wages earned and applicable hourly rates for uncompensated pre-jobsite and post-

12  jobsite activity and failure to display inclusive dates of each pay period.

13                                    **V. ORDER**

14  Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion for partial

15  summary judgment is GRANTED IN PART and DENIED IN PART as follows;

16      1.  All of Plaintiff's claims which purport to seek recovery for any alleged violations that

17          occurred prior to or occurring on May 24, 2010, are adjudicated in favor of Defendant;

18      2.  Plaintiff's first cause of action for failure to pay wages is adjudicated in favor of

19          Defendant insofar as it seeks to recover based on commute time in Defendant's company

20          vehicle;

21      3.  As to the remainder of Plaintiff's first cause of action, Defendant's motion for partial

22          summary judgment is DENIED;

23      4.  Plaintiff's second and third causes of action for failure to provide meal and rest periods

24          are adjudicated in favor of Defendant;

25

26

27

28

---

[10] Defendant argues that Plaintiff's reliance on *Willner v. Manpower, Inc.*, 35 F.Supp.3d at 1135-1136 (where the court applied the 2013 Amendment in determining injury) is misplaced. Doc. 27 at 18. The Court would note that the *Willner* court applied the additions of the 2013 Amendment to claims that arose before the effective date of that amendment. The *Willner* court's application of the 2013 Amendment to pre-2013 violations of Section 226 is consistent with this Court's finding that the 2013 Amendment merely clarified the law rather than creating new law.

5.   Plaintiff's fifth cause of action for non-compliant wage statements is adjudicate in favor of Defendant insofar as it seeks recovery for penalties beyond the one year limitations period or damages beyond the three year limitations period;

6.   Plaintiff's fifth cause of action is also adjudicated in favor defendant to the extent that it is derivative of his meal and wage period claims or would require a finding that Plaintiff is entitled to premium wages for meal or rest period denial;

7.   As to the remainder of Plaintiff's fifth cause of action, Defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   April 21, 2015

_____

SENIOR   DISTRICT   JUDGE